All right, our seventh case for this morning is United States v. Covarrubias. Mr. Ravitz. May it please the court. In this case, the district court sentenced my client, Mr. Covarrubias, to a prison term of 135 months, but in doing so, I submit he committed two errors. First, I don't believe he correctly applied or interpreted the guidelines with respect to the minor role adjustment, which Mr. Covarrubias had requested. And secondarily, the court ignored guideline 5C1.2, and in the process, I think violated 18 U.S.C. 3553F in a case where Mr. Covarrubias was declared to be safety valve eligible. That provision directed the court to any minimum mandatory sentence. That did not occur here. As a result, I think the sentence should be vacated, and the client is remanded for a new sentencing hearing. Now, I don't have much to say about the second issue, the 3553 issue, because the government hasn't responded to it, and it's, you know, the judge's findings in this case can be considered by this court. I think it's pretty clear he relied on the mandatory minimum as a peg to impose a sentence in this case in violation of 3553F. I want to focus my limited time today, with the court's permission, on the minor role issue. And under 3B1.2, my position would be that the relevant inquiry here is whether Mr. Covarrubias was a minor participant in the crime for which he was convicted. Now, 3B1.2 refers to the offense. It also refers to a defendant's actual criminal conduct. But let me just say, Mr. Ravitz, you know, looking at both what the district court said, which is obviously our most important thing, and actually some analogies the court makes. It's around, all these page numbers are different, but page 18 in the transcript, where he says he thinks the evidence falls far short of establishing minor participant, and he reviews all these things that Mr. Covarrubias is doing. He says the defendant was not, for example, some sort of mere unloader. Well, a person like that might have been a minor or even a minimal participant. He actually created this fake business to receive the tomato shipments. He's the front man. He has all sorts of different deliveries. He opens up a bank account. He picks up the drug money. He's doing a lot of things. I think that illusion early on in this discussion, to not being some sort of mere unloader, suggests that in the judge's mind, there is a concept of what a minor participant might be. It's just that he doesn't see Mr. Covarrubias in that kind of situation. So, we're on clear error review. How can that be clear error? I think the error really involves a failure to adequately consider the offense, and in that connection, Mr. Covarrubias' actual conduct vis-a-vis the offense. Let's back up a second. Well, he's not a mere unloader. You agree with that. You agree with all the factual things that Mr. Covarrubias was doing. With a couple exceptions. One, I don't think there's any evidence he unloaded anything. There's evidence that he- Well, that's the judge's point. I mean, the person, the mule who just kind of drives the truck and parks it at the warehouse is probably involved in the conspiracy if he knows there's a real part of it. I would agree with the judge in this respect. Certainly, my client was a front. There's no question about that. I disagree that he created the corporation in this case. I don't think there's a bit of evidence to show he created Covarrubias Distribution, Inc. He was the front for it. It had his name on it, but there's not any evidence in this record that shows he created that corporation. That aside, I think, generally speaking, the judge's Mr. Covarrubias's conduct with the banks, with the respect to the lease agreement and so forth is accurate. Here's what the judge missed. The judge didn't take into account the 159 kilo seizure in Laredo, Texas. That's the central and most significant circumstance of this entire case because it drives the sentence in large part. But you're not arguing that that wasn't properly counted as relevant conduct. No, exactly the point. The judge had to consider the relevant conduct in assessing my client's role in the offense. That's where he failed. And I urged him to consider the broader conspiracy here, but instead he focused on Covarrubias's acts up here in the Northern District as opposed to taking into account his role vis-a-vis this broader conspiracy. And in fact, Mr. Covarrubias was sentenced on the basis of relevant conduct. I think that is an important actual conduct, but again, to consider it in the context of the larger offense. But you know, everybody would get a minor participant adjustment if we were comparing them to the entire Sinaloa cartel, for example. That's like a giant operation. That would be ridiculous. But we can focus on the plea agreement and the relevant conduct for purposes of 1B1.3. That involved 219 kilograms, of which 159 involved a Laredo seizure, and my client had no involvement in that criminal conduct other than his name shows up on a bill of lading that leads the police to him a couple of months later. I urged the judge to consider that circumstance as part of the role, and yet when you look at the judge's findings while he talks about Venasio's involvement in the bank accounts and all the rest, there's not any discussion of addressing, there's no addressing the argument we've made that he should not consider this broader conspiracy. I think that's the principal error here, and why the case should be sent back to the judge for a new sentencing hearing. The judge didn't take in, or the plea agreement looks only at the first 60 kilogram shipment into Mr. Kovarubias' business. Aren't there other 60 gram amounts, I'm sorry, kilogram amounts that he could also have looked at? I think he did. I think the government originally tagged Mr. Kovarubias with an excess of 5, I think they estimated they had a number of something like 550. Right, more than 500 kilograms. So the judge obviously considered all that, and at the end of the day he sided with Mr. Kovarubias to the extent that he thought the case leveled 38. What Kovarubias admitted as part of the plea agreement, of course, was that he was responsible for the 219 kilos, which would be the 60 kilograms at the third transaction, and then the 159 in Laredo. The rest was somewhat in dispute in this case. I'm just saying if there were 60 each time in the other six deliveries, that's another 360 kilograms, it still doesn't feel like Mr. Kovarubias is minor, you know, other than in this broad comparative sense that we both agree doesn't work. Well, I'm not asking you to compare him to the operation of the Sinaloa cartel, but I am asking you to take into account what was happening in terms of the seizure in Laredo, which he had nothing to do with, which drives a sense, that's a two-level increase. Just by itself, 150 kilograms puts him at So it was significant, and it's something the judge ought to have considered in assessing whether there's a minor role in this case. Okay. If the court doesn't have any further questions, I thank you for your time. You can save the rest of your time, that's fine. Ms. Wong. Good morning, Your Honors, and may it please the court. Sherry Wong on behalf of the United States. The district court here applied the proper factors, and in relying on what were largely undisputed facts, did not clearly err in determining that the defendant was not entitled to the minor role reduction. It was the defendant's burden below to prove that under the totality of the circumstances, that the defendant was substantially less culpable than the average member of the conspiracy. Didn't the judge need to make some finding about who this hypothetical average member of the conspiracy is? No. Just sort of ballpark so he says, well, you were doing a lot, ergo not minor. This court held in Sandoval, Alaska, that the district court is not explicitly required to identify who the district court found to be the average member of the conspiracy. I didn't mean who so much as what are the set of roles for the conspiracy that was being charged, and how does his role fit into them? In Sandoval, Alaska, this court also said that a sentencing court is not required to specifically identify the characteristics of what the district court believed were the average member of the conspiracy. All the district court has to do below is provide this court with sufficient reasoning so that this court can ascertain that the district court, at least implicitly, compared the defendant to the other members of the conspiracy. Right, and that's my point because there are two ways you could look at this. You could look at it as saying minor role just means some absolute assessment. You're not doing enough to justify the full recommended guideline sentence that would otherwise apply. Or minor role could be a comparative assessment. So you might be doing a lot, but you might be doing so much less than everybody else that you should get the minor role break. And I've always understood this to be a comparative assessment, not just an absolute, it isn't really enough to justify the full guidelines. And so if you look at what the district judge said here, and the essence of his reasoning is over here on page 18 of the transcript, it seems like he's saying he's doing a whole lot. There's not too much to suggest a comparative analysis. Well, the district court did make a comparative analysis, and it's in the record. What the district court did was set up two points of comparison. On the one hand, the district court found that the defendant was not the supplier for the drugs in the conspiracy. And that person in the district court's mind was an individual who would have a higher level of culpability in the overall drug conspiracy. And the defendant wasn't that. And the district court then on the other hand said that, well, the defendant's not a mere unloader either. And that individual is someone who in the district court's mind had a lesser degree of culpability in the whole drug conspiracy. And then what the district court did was find that the defendant fell somewhere in between those two points on the spectrum. And then the district court analyzed what the defendant actually did during the course of the conspiracy, all the activities that he was involved in. And in analyzing those activities, determined that those activities placed the defendant beyond the role of a minor participant. And what the district court did was rely on what were largely undisputed facts in the plea agreement, that the defendant was the front man for this business, that he created this big business, the purpose of which was to facilitate these shipments coming into the United States. And he, the defendant never contests that he knows that hidden amongst these tomatoes are kilograms upon kilograms of cocaine. He doesn't. The district court specifically made a finding that at least no later than that third cocaine shipment, the defendant was aware that he was involved in the cocaine trafficking operation. And then once he became aware of that, he continued to be involved in the illegal activity. He let that illegal activity continue and he received payment for his participation in it. So there is ample evidence in the record that the defendant was involved in activities that placed him beyond the role of a minor participant from the beginning of the conspiracy all the way through to the end when that 10th shipment was intercepted by law enforcement. Even though the payment, as the defendant points out, was pretty modest. The evidence in the record shows that the defendant was receiving about $500 per week for allowing his name to be used on the warehouse lease. That's right. And so if you figure a kilo of cocaine is worth about $25,000, that's pretty little. I think the government would agree that the defendant's compensation for his participation in this activity was not as much as the street value of cocaine that was getting out and being distributed. But this amount of money was not insignificant to this defendant and he acknowledges that in his brief. He says that this is actually a substantial amount of money for him given his financial circumstances at the time. So he says he makes about $16,000 for his participation and that's his motive for participating in the conspiracy. He doesn't dispute that he received compensation for his participation. With respect to the defendant's argument that he didn't really have any involvement in this 159 kilo shipment that was intercepted by law enforcement, the government's position is that the defendant was absolutely responsible for that 159 kilo shipment. And even though he was not, even though that shipment was intended to be received at the Elgin Warehouse and that intended receipt was only made possible by actions that the defendant committed, by creating this fake business, by leasing this warehouse and the fact that he didn't know that the shipment was on its way there, he knew that shipments were coming in. And so his responsibility for that shipment is essentially the same as his responsibility for that third kilo shipment for which he's fully accepted responsibility for. So I don't think there's any basis to argue that he's not responsible for that 159 kilo shipment. And just briefly with respect to the mandatory minimum question that the defendant raised, I don't think it was improper for the district court to reference the mandatory minimum in imposing the defendant's sentence here. First, it was clear that the mandatory minimum did not apply. The parties agreed on that point and there's no evidence in the record that the district court ever thought that the defendant was subject to the mandatory minimum. The district court specifically used the advisory guideline range as his guideposts, 135 months to 168 months. But what the district court did was reference the mandatory minimum as sort of the floor that he wouldn't go below just because, you know, as he recognized, you know, sometimes drug quantity can be overemphasized in these an important factor in this case given the amount of quantity that the defendant helped to transport. So I don't think there was any problem with the district court referencing the mandatory minimum. And ultimately, it doesn't matter because the district court found that the appropriate sentence was 135 months, which was the very bottom of the guideline range. Although a bit above the mandatory minimum. A bit above the mandatory minimum. But again, at the bottom of the guideline range and the court reached that sentence after considering all of the appropriate 3553A factors. Unless the court has any other questions, the government would ask that the court affirm the defendant's sentence. All right. Thank you very much. Anything further, Mr. Ravitz? Yes, Judge Mayer. I'd like to respond to just two points that Ms. Wong made. First, I want to talk about the difference between responsibility and actual criminal conduct. My client took responsibility for the 159 kilos seized in Laredo. That's one of the principal drivers of the sentence in this case. But he did not participate directly in that criminal conduct. And I think for purposes of the role enhancement, that's one of the things the court has to focus on. What did he do vis-a-vis the 159 kilo shipment? As far as I can see, he did nothing. In fact, there was evidence the government introduced when they got one of the truck drivers, they had to make a consensually monitored call up to the Northern District of Illinois, and he talked to, it appears, Individual B, who was referenced in the indictment, not Mr. Covarrubias. So to the extent there's any evidence of direct criminal activity, it's not on Covarrubias' part. And just the second point has to do with the- Well, the truck was bound for his warehouse and labeled as such. Right. He was a front. On all the bills of lading, Covarrubias Distribution, Inc. with the address up here. Right. So the fact that he did not have specific firsthand knowledge that this particular shipment was on its way, it was part of the course of conduct, and it doesn't demonstrate lack of culpability. I'm not claiming that it does with respect to the- Or diminished culpability. Respect to the relevant conduct. But in terms of assessing his role, which I think is a key part of that inquiry, to the extent that the 159 kilos was the principal circumstance of this case. I see my time's up. I do think we- It's actually not, but if you're finished, you have about 30 more seconds. The other point I'd like to make is with respect to the profitability. I know the government had cited a case in its brief regarding, in response to our argument that Mr. Covarrubias only earned a pittance. The difference in that case, I think the difference is that the defendant in that case actually engaged in criminal conduct involving delivering most of the drugs involved in that case. Again, that's not the circumstance here with respect to the 159 kilos, so a little bit distinguished. Again, thanks for your time. All right. Thank you very much, too, as well, Mr. Ravitz. I understand you took this appointment, and the court appreciates that very much. It's of assistance to your client and to us. Thanks, as well, to the government. We will take the case under advisement.